IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Twyla N., | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) Case No. 3:22-cv-50087 |
| v. | ) |
| | ) Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|     *Defendant*. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Twyla N. brings this action under 42 U.S.C. § 405(g) seeking a remand of the decision denying her supplemental security income.[1] For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded.

**I. Background**

In May 2019, Plaintiff filed an application for supplemental security income alleging a disability beginning on February 27, 2019, because of lupus and arthritis in her right knee and both hands. R. 200, 226. She was 49 years old at the time she filed her application. Plaintiff stopped working on her alleged onset date, and the record reflects that Plaintiff attempted to work at different temp agency jobs between 2017 and 2019. R. 227 (showing Plaintiff worked for 3 days in 2017, 1 day in 2018, and 1 day in 2019). Plaintiff most recently attempted to work just before her alleged onset date doing assembly line work but was unable to because the work caused pain and swelling in her hands and wrist. R. 63, 368.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 6.

1

Following a remote hearing, an administrative law judge (ALJ) issued a decision in August 2021, finding that Plaintiff was not disabled. R. 33-45. The ALJ found that Plaintiff had the following severe impairments: rheumatoid arthritis; systemic lupus erythematosus; and degenerative joint disease of the right knee and bilateral hands. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. The ALJ concluded that Plaintiff had the residual functional capacity (RFC) to perform light work with certain restrictions, including that she could frequently handle (gross manipulation) and finger (fine manipulation) bilaterally. The ALJ determined that Plaintiff could not perform her past relevant work but that there were other jobs that existed in significant numbers in the national economy that she could perform, namely unskilled, light jobs such as cashier, sales attendant, and office helper.

After the Appeals Council denied Plaintiff's request for review on January 25, 2022, R. 1, Plaintiff filed the instant action. Dkt. 1.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's

2

determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

### III. Discussion

Plaintiff argues that the ALJ failed to adequately explain his determination that she can frequently handle and finger bilaterally and improperly discounted her treating physician's opinion that she had more severe hand limitations.[2] The Court agrees that the ALJ's RFC determination regarding Plaintiff's ability to use her hands was not supported by substantial evidence and requires a remand.

A claimant's RFC is the maximum work that she can perform despite any limitations. *See* 20 C.F.R. § 416.945(a)(1); Social Security Ruling 96-8p, 1996 WL 374184, at *2. An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history and findings, the effects of treatment, reports of daily activities, medical opinions, and effects of symptoms. 20 C.F.R. § 416.945(a)(3); Social Security Ruling 96-8p, 1996 WL 374184, at *5. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012).

Here, the ALJ found that Plaintiff had the severe impairments of rheumatoid arthritis, lupus, and degenerative joint disease in her hands, noting that Plaintiff's conditions were supported by laboratory tests and Plaintiff's medical record. R. 38 (citing R. 310-484, 878-81). In his

---

[2] In her opening brief, Plaintiff also argues that the ALJ did not support with substantial evidence the implicit determination that she would not exceed the permissible time off task or absenteeism rates. However, Plaintiff abandons this issue by failing to respond to the Commissioner's arguments in her reply brief. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (explaining that failing to respond to an argument in a response brief results in waiver). Nevertheless, Plaintiff should raise this issue with the ALJ on remand.

decision, the ALJ went to great lengths to summarize the record, showing treatment records reporting both normal and abnormal findings relating to Plaintiff's hands. R. 38-41. However, as Plaintiff points out, the ALJ provides very little analysis of the evidence to support his RFC determination that Plaintiff could frequently handle and finger.

For example, the ALJ cited to records indicating that Plaintiff tried multiple medications, injections, and prednisone bursts to relieve her hand and wrist pain, noting that Plaintiff had side effects to several medications and that sometimes the injections and prednisone bursts were ineffective. The ALJ also cited to records where Plaintiff reported no hand pain and examinations showing no synovitis or impaired motion. The ALJ cited to consultative examiner Dr. K.P. Ramchandani's examination of Plaintiff in September 2020. R. 40 (citing R. 803-09). The ALJ noted that Dr. Ramchandani found that Plaintiff had 4/5 grip strength in both hands, but she could make a fist, pick up objects like a paperclip and a coin, open and close a door, oppose her thumb to her fingers, and flip pages. The ALJ also summarized Plaintiff's testimony that approximately 2 to 3 times a month her hands were so swollen, stiff, and sore that she could not use them and that her symptoms lasted up to a week. R. 64-65. Plaintiff also testified that she could only use her hands for approximately 20 minutes and that she needed to rest them for 30 minutes before using them again. R. 72. Despite the ALJ's lengthy summary of the evidence, he offers little insight into what evidence supports his determination that Plaintiff can frequently handle and finger. *See Chuk v. Colvin*, No. 14 C 2525, 2015 WL 6687557, at *8 (N.D. Ill. Oct. 30, 2015) ("[S]ummarizing a medical history is not the same thing as analyzing it, in order to build a logical bridge from evidence to conclusion.").

The ALJ then evaluated the opinion evidence. The ALJ rejected the opinions of the state agency physicians, who found Plaintiff capable of medium work without any manipulative

4

limitations, because the record supported "additional limitations." R. 42. The ALJ also rejected the only other opinion in the record, namely the opinion of Plaintiff's primary care provider, Dr. Tracy Muhammad. Dr. Muhammad opined that Plaintiff was limited to handling and fingering with her right hand no more than 20% of the workday. R. 688. Dr. Muhammad also opined that Plaintiff was limited to handling with her left hand no more than 40% of the workday and fingering no more than 10%. The ALJ found Dr. Muhammad's opinion on Plaintiff's hand limitations not persuasive because it was inconsistent with Dr. Ramchandani's findings. The ALJ stated:

> Inconsistently, the only recorded hand use in the file comes from the State agency ordered consultative examination where the claimant had 4/5 bilateral hand grip, the ability to make a fist, and the ability to pick up objects like a paper clip and coin, open and close the door, oppose the thumb to fingers, and flip pages (B14F).

R. 43 (citing R. 804).

However, despite Dr. Ramchandani's physical examination findings that Plaintiff could handle and finger to some extent,[3] he provided no opinion on Plaintiff's manipulative limitations or her ability to sustain handling and fingering for up to two-thirds of an eight-hour workday. Social Security Ruling 83-10, 1983 WL 31251, at *6 ("'Frequent' means occurring from one-third to two-thirds of the time."). As such, the ALJ, and the Commissioner, cannot simply reference Dr. Ramchandani's findings as supportive of Plaintiff's ability to frequently handle and finger without further explanation.

The ALJ made no attempt to address whether Plaintiff's reduced grip strength suggests limitations in handling. *See Herrmann v. Colvin*, 772 F.3d 1110, 1112 (7th Cir. 2014) (finding it reasonable to conclude from consultative examiner's finding of reduced grip strength that the

---

[3] Handling, commonly referred to as gross manipulation, involves "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands." Social Security Ruling 85-15, 1985 WL 56857, at *7. Fingering, commonly referred to as fine manipulation, involves "picking, pinching, or otherwise working primarily with the fingers." *Id.*

5

claimant would have trouble handling). Additionally, although the ALJ acknowledged that Plaintiff reported flares in her symptoms, the ALJ made no attempt to recognize that Plaintiff may have been having fewer symptoms at the time of her examination with Dr. Ramchandani. Instead, the ALJ relied on these examination findings without any explanation, or support from another medical opinion, as to how he translated them into an ability to frequently handle and finger. *See Jannah S. F. v. Kijakazi*, 120CV02070DLPJPH, 2022 WL 883840, at *6 (S.D. Ind. Mar. 24, 2022) ("[B]ecause the ALJ found the opinions of the state agency reviewing physicians and Plaintiff's treating physician to be unpersuasive, an evidentiary deficit occurred, and the ALJ did not identify an evidentiary basis to support her RFC assessment."); *see also Williams v. Colvin*, 15 C 7011, 2016 WL 6248181, at *15 (N.D. Ill. Oct. 25, 2016) (remanding where the ALJ mischaracterized or rejected the medical opinions and failed to explain what evidence supported his conclusion that the plaintiff could do fine manipulation frequently).

An ALJ's failure to "explain how he arrived at [his] conclusions . . . in itself is sufficient to warrant reversal of the ALJ's decision." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (citing Social Security Ruling 96-8p, 1996 WL 374184, at *7 ("RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts.")). Even so, the Court "may affirm an ALJ's decision that does not conform with SSR 96-8p's requirements if [it is] satisfied that the ALJ 'buil[t] an accurate and logical bridge from the evidence to [his] conclusion.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quoting *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018)).

Other than discrediting Dr. Muhammad's opinion, the ALJ's only explanation for his RFC determination is as follows:

> The file overall, including minor imaging findings, normal hand use save 4/5 grip at the consultative examination, lack of follow through with prescribed physical

>therapy, self-described needing prednisone bursts during flares that happen twice-monthly vs. doctor noted March 2020 no burst in about a year, supports the claimant can perform light work except she can frequently handle and finger bilaterally.

R. 43. However, the Court cannot trace the path of the ALJ's reasoning. *See Briscoe*, 425 F.3d at 352-53.

First, the ALJ cites to "minor imaging findings" to support Plaintiff's ability to frequently handle and finger. However, the ALJ's only reference to imaging of Plaintiff's hands is: "Updated May 2021 bilateral hand X-rays (compared to November 2018 ones) showed mild stable findings in the metacarpal phalangeal joints of the second and third fingers, and mild degenerative changes of the left thumb at the interphalangeal joint." R. 41. The ALJ provides no explanation for how these X-ray findings, even if "mild," support Plaintiff's ability to sustain frequent handling and fingering. A mere summary of the evidence is not enough. *See Chuk*, 2015 WL 6687557, at *8.

Next, the ALJ cites to Plaintiff's "normal hand use save 4/5 grip" during the consultative examination. R. 43. However, the ALJ's reliance on Dr. Ramchandani examination findings is problematic for the reasons stated above.

The ALJ also cites to Plaintiff's "lack of follow through with prescribed physical therapy. However, the only recommended physical therapy that the ALJ's cites was for Plaintiff's knee pain. R. 42 (citing R. 388, 395, 652). Accordingly, this does not support the ALJ's decision to discount Plaintiff's hand limitations.

Lastly, the ALJ cites to Plaintiff's "self-described needing prednisone bursts during flares," which the ALJ found did not happen twice monthly as alleged by Plaintiff. R. 43. However, in discrediting Plaintiff's allegations, the ALJ mischaracterized Plaintiff's testimony. At the hearing, Plaintiff testified: "Yes, I have flares. And sometimes, sometimes it'd be like a couple of times they would have to put me back on the Prednisone – I'll have a Prednisone boost, burst or

whatever." R. 78. Plaintiff also testified that her doctors wanted her to stay away from prednisone as much as possible and that she only used prednisone during flares. *Id.* Plaintiff further testified that she last took prednisone about a month before the May 2021 hearing. R. 64.

Plaintiff did not testify that she had flares twice a month. Instead, Plaintiff testified that 2 to 3 times a month her hands were so swollen, stiff, and sore that she could not use them. R. 64-65. Additionally, the ALJ's reference to only one prednisone burst in April 2019 and March 2020 downplays the severity of Plaintiff's symptoms. Plaintiff's testimony was consistent with her intermittent use of prednisone, stating that her doctors only prescribed prednisone when necessary for flares and her doctors kept trying other medications to relieve her symptoms. *See, e.g.*, R. 362 (11/2018: "Continue with prednisone 5mg daily for now although not ideal for long term treatment. Will try weaning down with next visit"); R. 847 (2/2021: noting that Plaintiff's rheumatoid arthritis was "uncontrolled" and requested preapproval for Humira or Xeljanx); R. 18 (10/2021: noting that Plaintiff was no longer on prednisone and she did not tolerate Xeljanz, among other medications). The ALJ also failed to acknowledge Plaintiff's testimony that she struggled with her hands daily and that even with treatment, she continued to have pain of 6/10. R. 66-67; *see Cieszynski v. Kijakazi*, No. 22-2024, 2023 WL 2523499, at *3 (7th Cir. Mar. 15, 2023) (unpublished) (noting that "it is possible for a person to get some benefit from treatment yet not enough to be capable of more than part-time work") (internal quotation marks and citation omitted). An ALJ cannot cherry-pick the records by relying on those that support his opinion and ignoring those that do not. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

Despite the ALJ's unexplained or unsupported reasoning, the Commissioner maintains that the ALJ "provided sufficient discussion of the evidence to allow this court to track the ALJ's reasoning and be assured that the ALJ considered the important evidence." Def.'s Resp. at 5, Dkt. 23 (internal quotation marks and citation omitted). However, even in the records the Commissioner cites as supportive of the RFC, showing no synovitis or impaired motion and no reports of pain, Plaintiff continued to report joint pain in both hands, and Dr. Muhammad found that Plaintiff's "[s]ymptoms include arthritis and malaise and are of severe severity," and that her symptoms were made worse by movement and helped by rest. *See* Def.'s Resp. at 3-4, Dkt. 23 (citing R. 645, 716).

"Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.'" *Jarnutowski*, 48 F.4th at 774 (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)). If the ALJ thought that Plaintiff's hand impairments were not as limited as alleged, he should have fully accounted for the evidence in the record and explained how he reached that conclusion. Without this explanation, the ALJ failed to build a logical bridge between the evidence and his RFC determination. The ALJ's decision to discount Plaintiff's hand limitations is especially important to the analysis here because the vocational expert testified that if Plaintiff was limited to only occasional handling and fingering, there would be no light jobs available. R. 82.

Accordingly, remand is required for further consideration of Plaintiff's hand limitations. By remanding this case, the Court is not indicating that a particular result should be reached on remand. Instead, the ALJ must consider all the evidence relating to Plaintiff's hand impairments and sufficiently explain her reasons for the RFC limitations, including an appropriate evaluation of Dr. Muhammad's opinion as outlined in 20 C.F.R. § 416.920c. On remand, the ALJ should strongly consider obtaining an expert opinion on Plaintiff's manipulative abilities rather than

9

speculating about the limiting effects of Plaintiff's hand impairments. Additionally, Plaintiff should ensure that she raises all her concerns with the ALJ on remand, both in a pre-hearing brief and at the administrative hearing. Failure to explicitly raise these issues may result in a waiver if this case is again appealed to this Court.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceeding consistent with this opinion.

Date: March 31, 2023        By: _Lisa A._
                                 Lisa A. Jensen
                                 United States Magistrate Judge